## Terre Haute & Indianapolis Railroad Company v. John W. Grissom.

1. RAILROAD COMPANIES—*Fencing Tracks.*—A railroad company is bound to fence its tracks and side tracks, except at stations or depots, and at places which do not constitute part of the necessary depot or station grounds.

2. SAME—*Killing Domestic Animals Questions of Fact.*—The question as to whether an animal came upon the track of a railroad company upon such part of the depot grounds as are required to be open for the convenience of the public in the use of the railroad is a question of fact for the jury.

3. VERDICTS—*Manifestly Against the Weight of the Testimony.*—A verdict which is manifestly against the weight of the evidence will be set aside.

**Transcript from a Justice of the Peace.**—Action for killing a domestic animal. Appeal from the Circuit Court of Cumberland County; the Hon. SILAS Z. LANDES, Judge, presiding. Heard in this court at the November term, 1894. Reversed and remanded. Opinion filed June 3, 1895.

L. N. BREWER and T. J. GOLDEN, attorneys for appellant.

SCRANTON & SCRANTON, attorneys for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Action by appellee under the statute to recover the value of a cow killed by one of appellant's trains. Judgment below in his favor for $45. The negligence relied on was that the appellant company failed to comply with the statute requiring it to fence the track of its road. The precise point where the cow came upon the right of way or the track was not disclosed. The body of the animal was found by the side of the track south of the eastern portion of the unincorporated village of Woodbury. The village is situated on the north side of the "National road." The lots and business houses face upon this road and its streets open into it. The road is practically one of the streets of the village. The right of way of the appellant company extends to the

south line of the road. Before the village was platted the company maintained a switch there but had fences on both sides of the right of way inclosing the switch. The space within the fence upon the north side of the track and extending to the National road was then used to some extent by the public. Railroad ties, cord wood and timber were delivered there, gates being provided in the railroad fence for that purpose. Some time after this the appellee and others laid out and platted the village and built business houses and residences. He engaged in business as a merchant there; also bought wood and sold it to the appellant company. The gates in the railroad fence proved troublesome and inconvenient to the public and the appellant finally removed the fence, thus leaving open to the public the ground between the National road and its track and switch south of the platted lots and streets of the village. A cattle guard was placed at each end of the switch, and the fence on the north side of the right of way joined to them. Thus the track was fenced upon its south side in strict compliance with the statute, and was unfenced south of the platted portion of the village upon its north side. The cow came upon the right of way at some unknown point, from the National road, passed to the main track and was struck by a train and killed.

The body was found near the main track and about onethird the length of the switch from its east end. The question of fact presented to the jury was whether the cow came upon the track upon such part of the depot or station grounds as are required to be open for the convenience of the public in the use of the railroad. The instructions given by the court as to the application of the statute were correct. Those refused were not proper to be given. But we think the verdict of the jury was manifestly against the weight of the evidence. If we concede, as counsel for appellee contend, that the jury were warranted in assuming that the animal came upon the right of way at the point where the body was found, still we think the verdict is wrong. It appeared clearly from the evidence that the convenience of the public required that a fence should not

be maintained there. The appellee testified as follows: "The town was platted the whole length of the switch. The business houses front on the National road. On the space between the switch and the National road the company receives wood, lumber and stuff to be shipped away. I have received some goods there. The people around there sell wood and ties to the company, and considerable business is done there. I have sold them wood there. The switch is taken up nearly all the time with wood and lumber all through it."

John Connor, a witness in behalf of appellee, testified: "There was no town there until a few years ago. Up to that time the right of way on the north side was fenced up. After that they put in the switch, the trains generally stopped there.

"They had gates to get in and out awhile. The gates were found to be troublesome and were taken out; and when the town was laid out they took the right of way fence away, and it has been open ever since. The space between the National road and the switch is used by the public in transacting business with the railroad company. Wood and lumber and stock have been shipped from there, and goods put on and off there."

Benj. Sheehan, witness for appellant, testified: "I think the town of Woodbury was laid out about two years ago. There are stores and blacksmith shop, postoffice, etc. In 1893 there were three stores, blacksmith shop and sawmill. Have two mails a day there. The south line of the old National road is the north line of the railroad right of way, and the National road is inside of Woodbury; it is the street on the south side of Woodbury. The right of way comes up to the south line of the National road. The National road is the most public road there is in our county. Mr. Grissom (appellee) helped to lay out the town of Woodbury. The cow was killed from twenty-five to forty rods from the east end of the switch on the south side of the railroad. North of that is laid off in lots and blocks. The switch is 120 rods long, and the lots and blocks are laid out the full length of the switch and all along the National road and up to the

right of way of the railroad company. At the point where the cow was found it was mostly used for loading lumber. The yard is filled entirely with wood, generally. Mr. Grissom was engaged in running a store there in July, 1893. I think he sold wood to the company. The wood was delivered all along there, no particular place, wherever they could get room. The switch has been used, I think, three or four years. It is considerable of a timber point on the railroad; good deal of timber bought and sold there."

Charles C. Hodges, witness for appellant, testified : " Reside at Woodbury; was postmaster there; lived there about two years; am one of the parties who laid out and platted the town of Woodbury. The space between the National road and the switch was in use for shipping stuff away by the company and individuals."

No other testimony was produced upon the question. Comment upon that produced seems superfluous. No conflict is found in it. But one conclusion arises from it, and that is the place where the appellee presumes the cow came upon the right of way was a part of the depot or station grounds, and was required to be kept open for the convenience of the public. The business needs of the people of the village, and of its vicinity demanded ready and convenient access to the railroad grounds at that point.

The fence once there, though provided with gates, unreasonably discommoded and obstructed the public in the transaction of business with the company. It was for that reason removed, and properly, we think. The verdict should have been for the appellant.

Reversed and remanded.